IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| JOHN WEDDE and COURTNEY WEDDE, individually and as assignees of Kenneth Glen Sheets and Angela Sheets,<br><br>Plaintiffs,<br><br>v.<br><br>CENTRAL MUTUAL INSURANCE COMPANY,<br><br>Defendant. | CIVIL ACTION<br>FILE NO. _____ |

## COMPLAINT

Plaintiffs John Wedde and Courtney Wedde, individually and as assignees of Kenneth Glen Sheets and Angela Sheets, file this Complaint against Central Mutual Insurance Company ("Central Mutual") as follows:

## PARTIES, JURISDICTION AND VENUE

1.

John Wedde and Courtney Wedde are domiciled in and citizens of Tennessee.

2.

Central Mutual Insurance Company ("Central Mutual") is an insurance company formed in Ohio and with its principal place of business in Ohio. Central Mutual is a citizen of Ohio.

3.

There is diversity of citizenship between the parties. The amount in controversy exceeds $75,000, exclusive of interest and costs. Jurisdiction is proper in this Court.

4.

Central Mutual has made filings with the Georgia Office of Insurance and Safety Fire Commissioner stating that its registered agent for service of process is C T Corporation System, 289 S Culver St., Lawrenceville, GA 30046. Central Mutual has been served with process in this action.

5.

The Accident, Underlying Lawsuit and the denial of coverage that form the basis of this suit all occurred in this District. Venue in this Court is proper.

## **THE ACCIDENT**

6.

On March 26, 2022, Nathan Sheets was operating a 2015 Chevrolet Silverado.

7.

Nathan lost control of the Silverado and struck a tree. ("Accident").

8.

Elliott Wedde was a passenger in the Silverado at the time of the Accident. Elliott died as a proximate result of the Accident.

9.

Elliott was the son of plaintiffs John and Courtney Wedde.

10.

Nathan is the son of assignees Kenneth and Angela Sheets.

11.

Law enforcement investigated the Accident and found Nathan to be at fault for the Accident. Nathan was cited for violations of O.C.G.A. § 40-6-48, failure to maintain lane, O.C.G.A. § 40-6-393(a), homicide by vehicle, and O.C.G.A. § 40-6-391(a), operating under the influence of alcohol, drugs, or other intoxicating substances.

12.

The Silverado was owned by Kenneth Sheets. At the time of the Accident, Nathan was operating the Silverado with Kenneth's permission.

## THE UNDERLYING LAWSUIT

13.

The Weddes retained attorney Steven Leibel to recover for the death of their son, Elliott.

14.

On October 5, 2022, Mr. Leibel filed on his clients' behalf a lawsuit styled *John Wedde and Courtney Wedde, as Wrongful Death Claimants and Parents of*

*Elliott Mason Wedde, Deceased, and John Walter Ray Wedde, as Personal Representative of the Estate of Elliott Wedde, v. Nathan Thomas Sheets, Kenneth Glen Sheets and Angela Sheets,* State Court of Henry County, Georgia, Civil Action File No. STSV2022001656 ("Underlying Lawsuit" and "Underlying Complaint").  A true and correct copy of the Underlying Complaint is attached as Exhibit A.

15.

The Underlying Lawsuit alleged, *inter alia*, negligence on the part of Nathan. (Exhibit A, Count I)

16.

Mr. Leibel's investigation revealed evidence indicating that Kenneth and Angela Sheets might have known their son had serious health problems and substance-use issues that made him a danger behind the wheel and that they nonetheless enabled his ability to put in danger members of the public including passengers like Elliott.

17.

The Underlying Lawsuit alleged, *inter alia*, negligent entrustment against Kenneth and Angela Sheets.  (Exhibit A, Count II)

## **CENTRAL MUTUAL INSURANCE POLICIES**

18.

Prior to the Accident, Central Mutual sold to Kenneth and Angela Sheets an automobile liability insurance policy ("Primary Policy").  A true and correct copy of the Primary Policy is attached as Exhibit B.

19.

The Primary Policy listed the 2015 Chevrolet Silverado as an insured vehicle and had bodily injury liability limits of $250,000 per person and $500,000 per accident.  (Exhibit B, pp.1-2)

20.

The Primary Policy identifies Kenneth and Angela Sheets as insured drivers. (Exhibit B, pp.2-3)

21.

The Primary Policy identifies Nathan as an excluded driver.  (Exhibit B, p.2)

22.

The Primary Policy's insuring agreement states, in part, as follows:  "We will pay damages for 'bodily injury' or 'property damage' for which an 'insured' becomes legally responsible because of an auto accident."  (Exhibit B, p.8)

23.

The Primary Policy includes a Named Driver Exclusion Endorsement, which states, in part, as follows:

> The Named Driver Exclusion Endorsement applies with respect to the "named excluded driver" indicated in the Declarations.
>
> …
>
> "Named excluded driver" means a person who is shown in the Declarations as a named excluded driver.
>
> …
>
> With respect to the coverages to which this endorsement applies, as indicated in the Declarations, we will not pay damages, expenses or loss arising out of the maintenance or use of any auto or trailer by the "named excluded driver."

(Exhibit B, p.31)

24.

Prior to the Accident, Central Mutual sold to Kenneth Sheets and Angela Sheets an umbrella liability insurance policy ("Umbrella Policy"). A true and correct copy of the Umbrella Policy is attached as Exhibit C.

25.

The Umbrella Policy identifies the Primary Policy as underlying insurance. The Primary Policy and Umbrella Policy were sold as a single package to the Sheets and were designed to function together to protect the Sheets from various forms of legal liability to varying degrees depending on the risk.

6

26.

The Umbrella Policy also identifies Nathan as an excluded driver and also includes a Named Driver Exclusion Endorsement, but its terms are very different from the Named Driver Exclusion Endorsement in the Primary Policy.

27.

The Umbrella Policy's Named Driver Exclusion Endorsement specifically states as follows:

> The coverages provided by this Policy do not apply to "bodily injury" or "property damage" arising out of:
>
> …
>
> B.   The entrustment of any "auto" by an "insured" to the "named excluded driver."

(<u>Exhibit C</u>, p.27)

28.

The Umbrella Policy excludes coverage for negligent entrustment to an excluded driver.

29.

The Primary Policy does not exclude coverage for negligent entrustment to an excluded driver.

7

30.

The Primary Policy, unlike the Umbrella Policy, triggered Central Mutual's duty to defend and indemnify Kenneth and Angela Sheets for claims for negligent entrustment in Count II of the Underlying Complaint.

31.

Because at least one claim potentially triggered coverage, Central Mutual had the duty to defend all claims against Kenneth and Angela Sheets in the Underlying Lawsuit.

32.

Kenneth Sheets is an insured under the Primary Policy with respect to his liability for negligent entrustment of the insured vehicle to Nathan.

33.

Angela Sheets is an insured under the Primary Policy with respect to her liability for negligent entrustment of the insured vehicle to Nathan.

**CENTRAL MUTUAL DENIES COVERAGE**

34.

The Primary Policy and Umbrella Policy were in effect at the time of the Accident.

35.

Central Mutual received prompt notice of the Accident.

36.

Central Mutual received prompt and actual notice of the Underlying Lawsuit.

37.

On June 28, 2022, prior to the filing of the Underlying Lawsuit, Central Mutual sent a letter to Kenneth and Angela Sheets denying coverage to them with respect to any liability that might arise out of the Accident. A true and correct copy of the June 28 letter is attached hereto as Exhibit D.

38.

Prior to and during the Underlying Lawsuit, Mr. Leibel communicated with Central Mutual, and Central Mutual informed him it was denying all coverage.

39.

During the Underlying Lawsuit, the Weddes sought to obtain copies of the Central Mutual policies to evaluate Central Mutual's coverage positions. Central Mutual wrongfully and vexatiously resisted reasonable discovery of the policy terms for improper purposes, forcing the Weddes to serve subpoenas and file motions that should not have had to be served and filed had Central Mutual not acted wrongfully and vexatiously.

## **CENTRAL MUTUAL REJECTS SETTLEMENT OPPORTUNITIES**

40.

Under the Primary Policy, Central agreed to settle any claim against an insured "as we consider appropriate." (Exhibit B, p.10, Insuring Agreement A)

41.

On June 16, 2023, Mr. Leibel indicated to Central Mutual that he would settle claims for the Primary Policy limits of $250,000. A true and correct copy of the letter is attached as Exhibit E.

42.

On July 25, 2023, Mr. Leibel sent to Central Mutual a letter offering to settle all of the Weddes' claims against Kenneth and Angela Sheets for the Primary Policy liability limits of $250,000 and the medical payments limits of $10,000 ("Time-Limited Demand"). A true and correct copy of the Time-Limited Demand is attached hereto as Exhibit F.

43.

The Time-Limited Demand offered to provide Kenneth and Angela Sheets a limited liability release that, if accepted by Central Mutual, would have protected Kenneth and Angela Sheets' personal assets from all claims asserted against them in the Underlying Lawsuit.

44.

The Time-Limited Demand was capable of acceptance by Central Mutual.

45.

The Time-Limited Demand was a valid offer to settle claims against Kenneth and Angela Sheets within policy limits.

46.

The Time-Limited Demand provided Central Mutual a reasonable opportunity to settle claims against Kenneth and Angela Sheets within policy limits.

47.

The Time-Limited Demand demanded only proceeds of the Primary Policy and made no request for any proceeds of the Umbrella Policy.

48.

By way of an email from its counsel dated August 8, 2023, Central Mutual voluntarily undertook the duty to re-evaluate its coverage position and evaluate and respond to the Time-Limited Demand. A true and correct copy of the August 8, 2023, email exchange is attached as Exhibit G.

49.

Counsel for Central Mutual responded to the Time-Limited Demand on Central Mutual's behalf and rejected the demand on August 10, 2023. A true and correct copy of the August 10 letter is attached hereto as Exhibit H.

## **THE SHEETS ASSIGN THEIR CLAIMS**

50.

Because Central Mutual denied coverage, refused to defend, and refused to settle, Kenneth and Angela Sheets faced the possibility of a financially ruinous judgment against them in the Underlying Lawsuit.

51.

Although Kenneth and Nathan Sheets had additional automobile liability coverage with State Farm Mutual Automobile Insurance Company.  In light of the facts and circumstances of the case and Central Mutual's denial of coverage, the State Farm policy provided insufficient protection for the Sheets family, particularly for Angela Sheets.

52.

Abandoned by Central Mutual, Kenneth and Angela Sheets reasonably and in good faith entered into arms-length negotiations that resulted in a Covenant Not to Execute and Assignment of Rights ("Assignment").  A true and correct copy of the Assignment is attached as <u>Exhibit I</u>.

53.

Pursuant to the Assignment, Kenneth and Angela Sheets agreed to withdraw their answers in the Underlying Lawsuit and allow default judgment to be entered against them.  (<u>Exhibit I</u>, p.3)

## **ARBITRATION AND JUDGMENT**

54.

Default judgment was, in fact, entered against Kenneth and Angela Sheets, such that all allegations against them in the Underlying Complaint are deemed admitted.

55.

Central Mutual is collaterally estopped from relitigating allegations in the Underlying Complaint that are deemed admitted.

56.

Under the Assignment, the parties agreed to binding arbitration to determine damages for Count II of the Underlying Complaint.

57.

The arbitration was held on June 20, 2024, at Miles Mediation & Arbitration, LLC, and presided over by Rex Smith.  Based on witness testimony, evidence and applicable law, arbitrator Rex Smith determined that the Weddes' damages for Count II of the Underlying Complaint was $22,000,000.

58.

Following arbitration, the court in the Underlying Lawsuit conducted a hearing and was apprised of the Assignment, the arbitration and the other facts and circumstances of the Underlying Lawsuit.

59.

On June 26, 2024, the court in the Underlying Lawsuit approved the arbitration result and entered judgment in favor of the Weddes and against Kenneth and Angela Sheets in the amount of $22,000,000 for Count II of the Underlying Complaint ("Judgment"). A true and correct copy of the Judgment is attached hereto as <u>Exhibit J</u>.

60.

The Judgment accrues post-judgment interest at 11.5 percent annually.

## **COUNT 1**
## **BREACH OF DUTY TO DEFEND**

61.

The Weddes incorporate paragraphs 1 through 60 of this complaint as if fully set forth herein.

62.

Kenneth and Angela Sheets performed all conditions precedent for coverage under the Primary Policy.

63.

Central Mutual had a duty to defend Kenneth and Angela Sheets in the Underlying Lawsuit, and Central Mutual breached that duty.

64.

The Judgment arises naturally and according to the usual course of things from an insurer's breach of the duty to defend its insured. The parties to an insurance contract would contemplate a default judgment and resulting money judgment like the Judgment to be probable results of the breach of the duty to defend.

65.

But for Central Mutual's failure to defend, there would have been no judgment against Kenneth and Angela Sheets. In the alternative, but for Central Mutual's failure to defend, the Judgment against Kenneth and Angela Sheets would have been for a smaller amount.

66.

Because of its breaches, Central Mutual is liable for the full amount of the Judgment and all post-judgment interest and other damages, including nominal damages.

## COUNT 2
## FAILURE TO SETTLE UNDER THE COMMON LAW

67.

The Weddes incorporate paragraphs 1 through 60 of this complaint as if fully set forth herein.

68.

Upon receiving notice of the claim, Central Mutual had a duty to investigate whether there was liability coverage for Kenneth and Angela Sheets and the extent of potential legal liability for damages to which they were exposed because of the Weddes' claims.

69.

Central Mutual had one or more reasonable opportunities to settle the claims against Kenneth and Angela Sheets within policy limits.

70.

Central Mutual unreasonably refused to settle the claims against Kenneth and Angela Sheets within the applicable policy limits.

71.

Central Mutual breached its duties by failing to adequately investigate and evaluate the claims against Kenneth and Angela Sheets, which failure to investigate and evaluate contributed to Central Mutual's failure to accept one or more reasonable opportunities to settle the claims against Kenneth and Angela Sheets within policy limits.

72.

Central Mutual failed to treat Kenneth and Angela Sheets' interests equal to its own interests by gambling with Kenneth and Angela Sheets' financial interests,

by failing to adequately investigate and by choosing to not settle a claim where its insureds were at fault and exposed to damages.

73.

Central Mutual breached duties to its insureds, failed to act as a reasonable prudent liability insurer, and negligently and/or in bad faith and with a specific intent to injure failed to settle the claims.

74.

In addition, or in the alternative, Central Mutual's negligent or bad faith failure to settle was caused by its failure to hire and retain competent claims professionals and by its failure to train, supervise, provide time and resources to, or otherwise manage its claims professionals as would a reasonably prudent insurer that was attempting to or desired to treat its insureds' interests equal to its own interests.  All of these actions were taken with the specific intent to save money for itself while exposing its insureds to legal liability in excess of policy limits.

75.

As a proximate result of these breaches by Central Mutual, the Judgment was ultimately entered again Kenneth and Angela Sheets.  Central Mutual is liable for the full amount of the Judgment, plus post-judgment interest and other damages.

# COUNT 3
# JUDGMENT CREDITORS' DIRECT ACTION
# AGAINST JUDGMENT DEBTORS' INSURANCE COMPANY

76.

The Weddes incorporate paragraphs 1 through 60 of this complaint as if fully set forth herein.

77.

The Judgment fixes the liability of Central Mutual's insureds, allowing The Weddes to maintain an action directly against Central Mutual for the proceeds of the Policy.  *Smith v. GEICO*, 179 Ga. App. 654 (1986).

78.

Under Georgia law, "where an injured party obtains an unsatisfied judgment against a party who has insurance covering the injuries – so that the judgment fixes the liability of the insured party to the injured party – the injured party may bring an action directly against the insurer to satisfy the judgment from the available insurance proceeds."  *State Farm v. Bauman*, 313 Ga. App. 771, 771 (2012).

79.

Central Mutual is required to pay to the Weddes all amounts due and owing under the terms of the Policy in partial satisfaction of the Judgment, including post-judgment interest.

## COUNT 4
## ATTORNEYS' FEES UNDER O.C.G.A. § 13-6-11

80.

The Weddes incorporate paragraphs 1 through 60 of their complaint as if fully set forth herein.

81.

Central Mutual's actions and omissions constitute bad faith, stubborn litigiousness and have caused the Weddes unnecessary trouble and expense within the meaning of O.C.G.A. § 13-6-11, entitling them to attorneys' fees and other expenses of litigation in this lawsuit.

WHEREFORE, the Weddes pray for judgment in their favor against Central Mutual for the following:

A. That they have a trial by jury;

B. That they have and recover the following:

1. Special damages in the sum of $22,000,000, representing the principal amount of the judgment;

2. All post-judgment interest accruing on the judgment;

3. Further special damages;

4. General damages in an amount to be determined by the enlightened conscious of a fair and impartial jury;

5. Nominal damages;

6. Reasonable attorneys' fees and expenses in this litigation;

7. That all costs be taxed against Central Mutual;

8. Pre-judgment interest; and

9. Other and further relief as the Court may deem just and proper.

Respectfully submitted July 31, 2024.

>   /s/ Richard E. Dolder, Jr.
>   James (Jay) Sadd
>   Georgia Bar No. 622010
>   Richard E. Dolder, Jr.
>   Georgia Bar No. 220237
>   **SLAPPEY & SADD, LLC**
>   352 Sandy Springs Circle
>   Atlanta, Georgia 30328
>   (404) 255-6677 (telephone)
>   jay@lawyersatlanta.com
>   rich@lawyersatlanta.com
>   *Attorneys for Plaintiffs*