

CENTRAL MUTUAL INSURANCE COMPANY
800 S WASHINGTON ST
VAN WERT OH 45891-2381
www.central-insurance.com

**Effective Date:** 08/08/2021

# SUMMIT PERSONAL UMBRELLA POLICY DECLARATIONS

**REASON FOR THESE DECLARATIONS:** PERSONAL UMBRELLA LIAB RENEWAL CERTIFICATE

**NAMED INSURED**
KENNETH G SHEETS
ANGELA D SHEETS
472 KIMBERLY CT
MCDONOUGH GA 30252-3659

**AGENCY**
SNELLINGS WALTERS INS AGENCY
1117 PERIMETER CTR STE W101
ATLANTA GA  30338-5449
(770) 396-9600
www.snellingswalters.com

**POLICY NUMBER** PXS 3627643
**POLICY PERIOD**   AT ADDRESS OF NAMED INSURED FROM 08/08/2021 TO 08/08/2022
                    (12:01 A.M. STANDARD TIME)

## YOUR PREMIUM

| | |
|---|---|
| **TOTAL ANNUAL PREMIUM** | <span style="color:red">Redac</span> |

## YOU ARE SAVING MONEY

**YOUR DISCOUNTS**
PACKAGED POLICY
CREDIT FOR HIGHER UNDERLYING LIMIT

## LIMIT OF LIABILITY

$1,000,000
UNINSURED/UNDERINSURED -  $1,000,000

## DEDUCTIBLE

$250

## UNDERLYING POLICY SCHEDULE

| TYPE OF POLICY | COMPANY | LIABILITY LIMIT |
|---|---|---|
| AUTOMOBILE | CENTRAL MUTUAL INSURANCE | $250,000/$500,000/$100,000 |
| PRIMARY HOMEOWNERS | CENTRAL MUTUAL INSURANCE | $500,000 |

I hereby certify that this is a true and exact
copy of the original policy, as it existed on
Date of Loss: 03/26/2020
Policy Number: 3627643
Certified By: _____
Date Prepared: 03/03/2023

8-2284 03/12

**EXHIBIT C**

Page 1 of 3

# SUMMIT PERSONAL UMBRELLA POLICY DECLARATIONS (CONTINUED)

**NAMED INSURED**
KENNETH G SHEETS

**POLICY NUMBER**
PXS 3627643

---

## PREMIUM COMPUTATION

| | NUMBER | PREMIUM |
|---|---|---|
| INITIAL RESIDENCE | | <span style="color:red">Redacted<br>Premium Info</span> |
|     472 KIMBERLY CT | | |
|     MCDONOUGH GA 30252 | | |
| ON PREMISES SWIMMING POOL(S) | 01 | |
| INITIAL VEHICLE | | |
|     2017 LEXU RX 350 | | |
|     VIN JTJBZMCA6H2024195 | | |
| ADDITIONAL VEHICLE(S) | 04 | |
|     2009 ROVE RANGE ROVE | | |
|     VIN SALSK25499A191217 | | |
|     2011 FORD F-150 | | |
|     VIN 1FTFW1R66BFD00082 | | |
|     2019 HOND ACCORD | | |
|     VIN 1HGCV3F98KA017990 | | |
|     2015 CHEV SILVERADO | | |
|     VIN 3GCUKSECXFG402560 | | |

SUMMIT ENDORSEMENT
    CLAIMS EXPENSE - LOSS OF EARNINGS UP TO $1,000 PER DAY
    RENTAL CAR LOSS OF USE UP TO $1,000
    LOSS ASSESSMENT - LIABILITY COVERAGE UP TO $100,000

BASE UNINSURED/UNDERINSURED MOTORIST COVERAGE

**TOTAL DISCOUNTS**

**TOTAL ANNUAL PREMIUM**

---

## POLICY EXCLUSIONS

    NAMED DRIVER EXCLUSION
    NATHAN SHEETS

# SUMMIT PERSONAL UMBRELLA POLICY DECLARATIONS (CONTINUED)

**NAMED INSURED**
KENNETH G SHEETS

**POLICY NUMBER**
PXS 3627643

**FORMS APPLICABLE TO POLICY**

| | FORM | DATE | FORM TITLE |
|---|---|---|---|
| | DL9801 | 02/15 | PERSONAL UMBRELLA LIABILITY POLICY |
| | DL9817 | 02/15 | PUP LIABILITY POLICY EXCL-FUNGI, WET OR DRY ROT, OR BACTERIA ENDT |
| | DL9874 | 02/19 | GA-PERSONAL UMBRELLA POLICY AMENDMENT OF POLICY PROVISIONS |
| | DL9912 | 10/15 | PUP PUBLIC OR LIVERY CONVEYANCE EXCLUSION ENDORSEMENT |
| | 20-1768 | 08/91 | MUTUAL POLICY CONDITIONS-APPLICABLE TO CENTRAL MUTUAL |
| | 20-1769 | 08/91 | PROVISIONS APPLICABLE TO CENTRAL MUTUAL & ALL AMERICA INS CO |
| * | 20-2088 | 06/19 | CENTRAL INSURANCE COMPANIES PRIVACY NOTICE |
| * | 20-2143 | 06/14 | AVAILABLE PAY PLANS |
| * | 20-2342 | 02/15 | PERSONAL UMBRELLA RENEWAL REMINDER |
| | 8-1451 | 02/15 | PERSONAL UMBRELLA POLICY UNINSURED/UNDERINSURED MOTORISTS COV END |
| | 8-1912 | 07/12 | SCHEDULE OF MINIMUM REQUIRED UNDERLYING LIMITS |
| | 8-2147 | 02/15 | PERSONAL UMBRELLA NAMED DRIVER EXCLUSION ENDORSEMENT |
| | 8-2278 | 01/12 | CENTRAL MUTUAL SUMMIT PERSONAL UMBRELLA ENDORSEMENT |

* Denotes forms attached with this transaction.

| _____ST_____ | _____B.J.H_____ | 06/30/2021 |
|---|---|---|
| **PRESIDENT** | **SECRETARY** | **DATE** |

THESE DECLARATIONS REPLACE ALL PRIOR DECLARATIONS IF ANY, AND WITH POLICY PROVISIONS AND ENDORSEMENTS, COMPLETE THIS POLICY

DL9801 02/15

# PERSONAL UMBRELLA LIABILITY POLICY

## AGREEMENT

In return for payment of the premium and subject to all the terms of this Policy, we agree with you as follows:

## I. Definitions

**A.** Throughout this Policy, "you" and "your" refer to:

    **1.** The "named insured" shown in the Declarations; and

    **2.** The spouse if a resident of the same household.

**B.** "We", "us" and "our" refer to the company providing this insurance.

**C.** For purposes of this Policy, a private passenger type auto, pickup or van shall be deemed to be owned by a person if leased:

    **1.** Under a written agreement to that person; and

    **2.** For a continuous period of at least six months.

Other words and phrases are defined. They are in quotation marks when used.

**D.** "Aircraft Liability", "Hovercraft Liability", "Recreational Motor Vehicle Liability" and "Watercraft Liability", subject to the provisions in **2.** below, mean the following:

    **1.** Liability for "bodily injury" or "property damage" arising out of:

        **a.** The ownership of such vehicle or craft by an "insured";

        **b.** The maintenance, occupancy, operation, use, loading or unloading of such vehicle or craft by any person;

        **c.** The entrustment of such vehicle or craft by an "insured" to any person;

        **d.** The failure to supervise or negligent supervision of any person involving such vehicle or craft by an "insured"; or

        **e.** Vicarious liability, whether or not imposed by law, for the actions of a child or minor involving such vehicle or craft.

    **2.** For the purpose of this definition:

        **a.** Aircraft means any contrivance used or designed for flight, except model or hobby aircraft not used or designed to carry people or cargo;

        **b.** Hovercraft means a self-propelled motorized ground-effect vehicle and includes, but is not limited to, flarecraft and air cushion vehicles;

        **c.** Watercraft means a craft principally designed to be propelled on or in water by wind, engine power or electric motor; and

        **d.** Recreational Motor Vehicle means a "recreational motor vehicle" as defined in Paragraph **N.**

**E.** "Auto" means:

    **1.** A private passenger motor vehicle, motorcycle, moped or motor home;

    **2.** A vehicle designed to be pulled by a private passenger motor vehicle or motor home; or

    **3.** A farm wagon or farm implement while towed by a private passenger motor vehicle or motor home.

**F.** "Bodily injury" means bodily harm, sickness or disease, including required care, loss of services and death that results.

**G.** "Business" means:

    **1.** A trade, profession or occupation engaged in on a full-time, part-time or occasional basis; or

    **2.** Any other activity engaged in for money or other compensation, except the following:

        **a.** One or more activities, not described in **b.** through **d.** below, for which no "insured" receives more than $2,000 in total compensation for the 12 months before the beginning of the policy period;

        **b.** Volunteer activities for which no money is received other than payment for expenses incurred to perform the activity;

      **c.** Providing home day care services for which no compensation is received, other than the mutual exchange of such services; or

      **d.** The rendering of home day care services to a relative of an "insured".

**H.** "Family member" means a resident of your household who is:

  **1.** Your relative, including a ward or foster child; or

  **2.** Under the age of 21 and in the care of you or an "insured" who is age 21 or over.

**I.** "Fuel system" means:

  **1.** One or more containers, tanks or vessels which have a total combined storage capacity of 100 or more U.S. gallons of liquid fuel; and:

      **a.** Are, or were, located on any single location covered by "underlying insurance"; and

      **b.** Are, or were, used to hold liquid fuel that is intended to be used solely for one or more of the following:

         **(1)** To heat or cool a building;

         **(2)** To heat water;

         **(3)** To cook food; or

         **(4)** To power motor vehicles, other motorized land conveyances or watercraft owned by an "insured";

  **2.** Any pumping apparatus, which includes the motor, gauge, nozzle, hose or pipes that are, or were, connected to one or more containers, tanks or vessels described in Paragraph **I.1.;**

  **3.** Filler pipes and flues connected to one or more containers, tanks or vessels described in Paragraph **I.1.;**

  **4.** A boiler, furnace or a water heater, the liquid fuel for which is stored in a container, tank or vessel described in Paragraph **I.1.;**

  **5.** Fittings and pipes connecting the boiler, furnace or water heater to one or more containers, tanks or vessels described in Paragraph **I.1.;** or

  **6.** A structure that is specifically designed and built to hold the liquid fuel that escapes from one or more containers, tanks or vessels described in Paragraph **I.1.**

**J.** "Insured" means:

  **1.** You.

  **2.** A "family member".

  **3.** Any person using an "auto", "recreational motor vehicle", or watercraft, which is owned by you and covered under this Policy. Any person using a temporary substitute for such "auto" or "recreational motor vehicle" is also an "insured".

  **4.** Any other person or organization but only with respect to the legal responsibility for acts or omissions of you or any "family member" while you or any "family member" is using an "auto" or "recreational motor vehicle" covered under this Policy. However, the owner or lessor of an "auto" or "recreational motor vehicle" loaned to or hired for use by an "insured" or on an "insured's" behalf, is not an "insured".

  **5.** With respect to animals owned by you or any "family member", any person or organization legally responsible for such animals. However, a person or organization using or having custody of such animals in the course of any "business" or without the consent of the owner is not an "insured".

**K.** "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions, which results, during the policy period, in:

  **1.** "Bodily injury"; or

  **2.** "Property damage".

**L.** "Personal injury" means injury arising out of one or more of the following offenses, but only if the offense was committed during the policy period:

  **1.** False arrest, detention or imprisonment;

  **2.** Malicious prosecution;

  **3.** The wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies, committed by or on behalf of its owner, landlord or lessor;

 Copyright, Insurance Services Office, Inc. 2014

   **4.** Oral or written publication, in any manner, of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services; or

   **5.** Oral or written publication, in any manner, of material that violates a person's right of privacy.

**M.** "Property damage" means physical injury to, destruction of, or loss of use of tangible property.

**N.** "Recreational motor vehicle" means:

   **1.** All-terrain vehicle;

   **2.** Dune buggy;

   **3.** Golf cart;

   **4.** Snowmobile; or

   **5.** Any other motorized land vehicle which is designed for recreational use off public roads.

**O.** "Retained limit" means:

   **1.** The total limits of any "underlying insurance" and any other insurance that applies to an "occurrence" or offense which:

   **a.** Are available to an "insured"; or

   **b.** Would have been available except for the bankruptcy or insolvency of an insurer providing "underlying insurance"; or

   **2.** The deductible, if any, as stated in the Declarations, if the "occurrence" or offense:

   **a.** Is covered by this Policy; and

   **b.** Is not covered by "underlying insurance" or any other insurance.

**P.** "Underlying insurance" means any policy providing the "insured" with primary liability insurance covering one or more of the types of liability listed in the Declarations and at limits no less than the retained policy limits shown for those types of liability listed in the Declarations.

## II. Coverages

**A. Insuring Agreement**

We will pay damages, in excess of the "retained limit", for:

   **1.** "Bodily injury" or "property damage" for which an "insured" becomes legally liable due to an "occurrence" to which this insurance applies; and

   **2.** "Personal injury" for which an "insured" becomes legally liable due to one or more offenses listed under the definition of "personal injury" to which this insurance applies.

Damages include prejudgment interest awarded against an "insured".

**B. Defense Coverage**

   **1.** If a claim is made or a suit is brought against an "insured" for damages because of "bodily injury" or "property damage" caused by an "occurrence" or "personal injury" caused by an offense to which this Policy applies, we:

   **a.** Will provide a defense at our expense by counsel of our choice, even if the suit is groundless, false or fraudulent. However, we are not obligated to defend any suit or settle any claim if:

   **(1)** The "occurrence" or offense is covered by other "underlying insurance" available to the "insured"; or

   **(2)** There is no applicable "underlying insurance" in effect at the time of the "occurrence" or offense and the amount of damages claimed or incurred is less than the applicable deductible amount shown in the Declarations;

   **b.** May join, at our expense, with the "insured" or any insurer providing "underlying insurance" in the investigation, defense or settlement of any claim or suit which we believe may require payment under this Policy.

   However, we will not contribute to the costs and expenses incurred by any insurer providing "underlying insurance"; and

   **c.** Will pay any expense incurred for the "insured's" defense, with our written consent, in any country where we are prevented from defending an "insured" because of laws or other reasons.

 Copyright, Insurance Services Office, Inc. 2014

   **2.** We may investigate and settle any claim or suit that we decide is appropriate. Our duty to settle or defend ends when our limit of liability for the "occurrence" or offense has been exhausted by payment of judgments or settlements.

**C. Additional Coverages**

We will pay:

   **1.** Expenses we incur and costs taxed against an "insured" in any suit we defend;

   **2.** Premiums on bonds required in a suit we defend, but not for bond amounts to the extent they exceed our limit of liability. We need not apply for or furnish any bond;

   **3.** Reasonable expenses incurred by an "insured" at our request, including actual loss of earnings (but not loss of other income) up to $250 per day, for assisting us in the investigation or defense of a claim or suit; and

   **4.** Interest on our share of the judgment which accrues after entry of the judgment and before we pay or tender, or deposit in court, that part of the judgment which does not exceed the limit of liability that applies.

These payments will not reduce the limit of liability.

**D. Limit Of Liability**

Our total liability under this Policy for all damages resulting from any one "occurrence" or offense will not be more than the Limit Of Liability as shown in the Declarations of this Policy. This limit is the most we will pay regardless of the number of "insureds", claims made, persons injured, or vehicles involved in an accident.

## III. Exclusions

**A.** The coverages provided by this Policy do not apply to:

   **1.** "Bodily injury" or "property damage" which is expected or intended by an "insured" even if the resulting "bodily injury" or "property damage":

      **a.** Is of a different kind, quality or degree than initially expected or intended; or

      **b.** Is sustained by a different person, entity  or property than initially expected or intended.

   However, this exclusion **(A.1.)** does not apply to:

      **(1)** "Bodily injury" or "property damage" resulting from the use of reasonable force by an "insured" to protect persons or property; or

      **(2)** "Bodily injury" or "property damage" resulting from the use of reasonable force by an "insured" to prevent or eliminate danger in the operation of "autos", "recreational motor vehicles" or watercraft;

   **2.** "Personal injury":

      **a.** Caused by or at the direction of an "insured" with the knowledge that the act would violate the rights of another and would inflict "personal injury";

      **b.** Arising out of oral or written publication of material, if done by or at the direction of an "insured" with knowledge of its falsity;

      **c.** Arising out of oral or written publication of material whose first publication took place before the beginning of the policy period;

      **d.** Arising out of a criminal act committed by or at the direction of an "insured"; or

      **e.** Sustained by any person as a result of an offense directly or indirectly related to the employment of this person by an "insured";

   **3.** "Bodily injury", "personal injury" or "property damage" arising out of or in connection with a "business":

      **a.** Engaged in by an "insured"; or

      **b.** Conducted from:

         **(1)** Any part of a premises owned by or rented to an "insured"; or

         **(2)** Vacant land owned by or rented to an "insured".

   This exclusion **(A.3.)** applies but is not limited to an act or omission, regardless of its nature or circumstance, involving a service or duty rendered, promised, owed, or implied to be provided because of the nature of the "business".

However, this exclusion (**A.3.**) does not apply to:

**(1)** The rental or holding for rental of:

    **(a)** The residence premises shown in the Declarations:

        **(i)** On an occasional basis if used only as a residence;

        **(ii)** In part, for use only as a residence, unless a single-family unit is intended for use by the occupying family to lodge more than two roomers or boarders; or

        **(iii)** In part, as an office, school, studio or private garage;

    **(b)** Any part of a one- to four-family dwelling, other than the residence premises, to the extent that personal liability coverage is provided by "underlying insurance";

    **(c)** A condominium, cooperative, or apartment unit, other than the residence premises, to the extent that personal liability coverage is provided by "underlying insurance";

**(2)** Civic or public activities performed by an "insured" without compensation other than reimbursement of expenses;

**(3)** An insured minor involved in self-employed "business" pursuits, which are occasional or part-time and customarily undertaken on that basis by minors. A minor means a person who has not attained his or her:

    **(a)** 18th birthday; or

    **(b)** 21st birthday if a full-time student;

**(4)** The use of an "auto" you own, or a temporary substitute for such "auto", by you, a "family member" or a partner, agent or employee of you or a "family member" while employed or otherwise engaged in the "business" of:

    **(a)** Selling;

    **(b)** Repairing;

    **(c)** Servicing;

    **(d)** Storing; or

    **(e)** Parking;

    vehicles designed for use mainly on public highways;

**(5)** The use of an "auto" for "business" purposes, other than an auto business, by an "insured";

**4.** "Bodily injury" or "property damage" arising out of the ownership or operation of an "auto" while it is being used as a public or livery conveyance. This exclusion (**A.4.**) does not apply to:

    **a.** A share-the-expense car pool; or

    **b.** The ownership or operation of an "auto" while it is being used for volunteer or charitable purposes;

**5.** "Bodily injury" or "property damage" arising out of the ownership, maintenance or use of an "auto" while:

    **a.** Enrolled in a personal vehicle sharing program under the terms of a written agreement; and

    **b.** Being used in connection with such personal vehicle sharing program by anyone other than you or any "family member";

**6.** "Bodily injury", "personal injury" or "property damage" arising out of the rendering of or failure to render professional services;

**7.** "Aircraft Liability";

**8.** "Hovercraft Liability";

**9.** "Watercraft Liability".

However, this exclusion (**A.9.**) does not apply to the extent that watercraft coverage is provided by "underlying insurance" at the time of the "occurrence";

**10.** "Recreational Motor Vehicle Liability".

However, this exclusion (**A.10.**) does not apply with respect to any "recreational motor vehicle":

    **a.** Owned by you or a "family member" to the extent that "recreational motor vehicle" coverage is provided by "underlying insurance" at the time of the "occurrence"; or

 Copyright, Insurance Services Office, Inc. 2014

    **b.** That you or a "family member" does not own;

**11.** "Bodily injury" or "property damage" caused directly or indirectly by war, including the following and any consequence of any of the following:

    **a.** Undeclared war, civil war, insurrection, rebellion or revolution;

    **b.** Warlike act by a military force or military personnel; or

    **c.** Destruction, seizure or use for a military purpose.

    Discharge of a nuclear weapon will be deemed a warlike act even if accidental;

**12.** A person using an "auto", "recreational motor vehicle" or watercraft without a reasonable belief that that person is entitled to do so. This exclusion **(A.12.)** does not apply to a "family member" using an "auto", "recreational motor vehicle" or watercraft you own;

**13.** The ownership, maintenance or use of:

    **a.** Any "auto" for the purpose of:

        **(1)** Participating or competing in; or

        **(2)** Practicing or preparing for;

    any prearranged or organized:

        **(a)** Racing or speed contest; or

        **(b)** Driver skill training or driver skill event; and

    **b.** Any watercraft which, at the time of the "occurrence", is:

        **(1)** Being operated in; or

        **(2)** Practicing or preparing for;

        any prearranged or organized:

        **(a)** Race;

        **(b)** Stunt activity;

        **(c)** Speed contest; or

        **(d)** Other competition.

    However, this exclusion **(A.13.)** does not apply to:

        **(1)** Motorcycle rider skill training in connection with a course designed by the Motorcycle Safety Foundation, or any similar course administered by any state agency, to improve motorcycle rider skills;

        **(2)** A sailing vessel; or

        **(3)** Watercraft involved in predicted log cruises;

**14.** "Bodily injury" or "personal injury" to you or a "family member".

    This exclusion also applies to any claim made or suit brought:

    **a.** To repay; or

    **b.** Share damages with;

    another person who may be obligated to pay damages because of "bodily injury" or "personal injury" to you or a "family member";

**15.** "Bodily injury" or "personal injury" arising out of:

    **a.** The transmission of a communicable disease by an "insured";

    **b.** Sexual molestation, corporal punishment or physical or mental abuse; or

    **c.** The use, sale, manufacture, delivery, transfer or possession by any person of a Controlled Substance(s) as defined by the Federal Food and Drug Law at 21 U.S.C.A. Sections 811 and 812. Controlled Substances include but are not limited to cocaine, LSD, marijuana and all narcotic drugs. However, this exclusion **(A.15.)** does not apply to the legitimate use of prescription drugs by a person following the lawful orders of a licensed health care professional;

**16.** "Bodily injury", "personal injury" or "property damage" arising out of an act or omission of an "insured" as an officer or member of a board of directors of a corporation or organization. However, this exclusion **(A.16.)** does not apply if the corporation or organization is not-for-profit and the "insured" receives no compensation other than reimbursement of expenses;

17. "Property damage" to property owned by an "insured". This includes costs or expenses incurred by an "insured" or others to repair, replace, enhance, restore or maintain such property to prevent injury to a person or damage to property of others, whether on or away from the residence premises shown in the Declarations;

18. "Property damage" to property rented to, occupied or used by, or in the care, custody or control of, an "insured" to the extent that the "insured" is obligated by contract to provide insurance for such property. However, this exclusion **(A.18.)** does not apply to "property damage" caused by fire, smoke or explosion;

19. "Bodily injury" to any person eligible to receive any benefits:

    **a.** Voluntarily provided; or

    **b.** Required to be provided;

    by an "insured" under any:

    **(1)** Workers' compensation law;

    **(2)** Nonoccupational disability law; or

    **(3)** Occupational disease law;

20. "Bodily injury" or "property damage" for which an "insured" under this Policy:

    **a.** Is also an insured under a nuclear energy liability policy issued by the:

    **(1)** Nuclear Energy Liability Insurance Association;

    **(2)** Mutual Atomic Energy Liability Underwriters; or

    **(3)** Nuclear Insurance Association of Canada;

    or any of their successors; or

    **b.** Would be an insured under that policy but for the exhaustion of its limit of liability;

21. "Bodily injury", "personal injury" or "property damage" caused by an "occurrence" or offense involving the escape of fuel from a "fuel system";

22. "Bodily injury" or "personal injury" caused by an "occurrence" or offense involving the absorption, ingestion or inhalation of lead; or

23. "Personal injury" or "property damage" caused by an "occurrence" or offense of lead contamination.

**B.** Liability coverage does not apply to any assessment charged against you as a member of an association, corporation or community of property owners.

**C.** We do not provide:

1. Automobile no-fault or any similar coverage under this Policy; or

2. Uninsured Motorists Coverage, Underinsured Motorists Coverage, or any similar coverage unless this Policy is endorsed to provide such coverage.

## IV. Maintenance Of Underlying Insurance

You must maintain the "underlying insurance" at the full limits stated in the Declarations and with no change to more restrictive conditions during the term of this Policy. If any "underlying insurance" is canceled or not renewed and not replaced, you must notify us at once.

If you fail to maintain "underlying insurance", we will not be liable under this Policy for more than we would have been liable if that "underlying insurance" was in effect.

## V. Duties After Loss

In case of an "occurrence" or offense likely to involve the insurance under this Policy, you or another "insured" will perform the following duties that apply. We have no duty to provide coverage under this Policy if your failure to comply with the following duties is prejudicial to us. You will help us by seeing that these duties are performed:

**A.** Give written notice to us or our agent as soon as is practical. Such notice shall set forth:

1. The identity of the Policy and named insured shown in the Declarations;

2. Reasonably available information about the time, place and circumstances of the "occurrence" or offense; and

3. The names and addresses of any claimants and witnesses.

 Copyright, Insurance Services Office, Inc. 2014

**B.** If a claim is made or a suit is brought against an "insured", the "insured" must:

   **1.** Notify us immediately in writing;

   **2.** Cooperate with us in the investigation, settlement or defense of any claim or suit;

   **3.** Promptly forward to us every notice, demand, summons or other process relating to the "occurrence" or offense;

   **4.** At our request, help us:

      **a.** To make settlement;

      **b.** To enforce any right of contribution or indemnity against any person or organization who may be liable to an "insured";

      **c.** With the conduct of suits and attend hearings and trials; and

      **d.** To secure and give evidence and obtain the attendance of witnesses.

**C.** The "insured" will not, except at the "insured's" own cost, voluntarily make payment, assume obligation or incur expense to others.

## VI. General Provisions

### A. Appeals

If an "insured" or any insurer providing "underlying insurance" elects not to appeal a judgment which exceeds the "retained limit", we may do so at our own expense. We will pay all costs, taxes, expenses and interest related to our appeal. These payments will not reduce the limit of liability.

### B. Bankruptcy Of An Insured

Bankruptcy or insolvency of an "insured" will neither:

   **1.** Relieve us of our obligations under this Policy; nor

   **2.** Operate to cause this Policy to become primary in the event the "insured" is unable to satisfy the "retained limit" either because of insufficient "underlying insurance" or insufficient personal assets.

### C. Bankruptcy Of An Underlying Insurer

In the event of bankruptcy or insolvency of any underlying insurer, the insurance afforded by this Policy shall not replace such "underlying insurance", but shall apply as if the "underlying insurance" was valid and collectible.

### D. Fraud

We do not provide coverage for any "insured" who has made fraudulent statements or engaged in fraudulent conduct in connection with any "occurrence" or offense for which coverage is sought under this Policy.

### E. Liberalization Clause

If we make a change which broadens coverage under this edition of our policy without additional premium charge, that change will automatically apply to your insurance as of the date we implement the change in your state, provided that this implementation date falls within 60 days prior to or during the policy period stated in the Declarations.

This Liberalization Clause does not apply to changes implemented with a general program revision that includes both broadenings and restrictions in coverage, whether that general program revision is implemented through introduction of:

   **1.** A subsequent edition of this Policy; or

   **2.** An amendatory endorsement.

### F. Other Insurance

The coverage afforded by this Policy is excess over any other insurance available to an "insured", except insurance written specifically to be excess over this Policy.

### G. Our Right To Recover Payment

If we make a payment under this Policy and the person to or for whom payment was made has a right to recover damages from another, we shall be subrogated to that right. That person shall do:

   **1.** Whatever is necessary to enable us to exercise our rights; and

   **2.** Nothing after loss to prejudice them.

**H. Policy Period And Territory**

The policy period is stated in the Declarations. This Policy applies to an "occurrence" or offense which takes place anywhere in the world.

**I. Severability Of Insurance**

This insurance applies separately to each "insured". However, this provision will not increase our limit of liability for any one "occurrence" or offense.

**J. Suit Against Us**

1. No legal action can be brought against us:

   **a.** Unless there has been full compliance with all of the terms of this Policy; and

   **b.** Until the obligation of the "insured" has been determined by final judgment or by agreement signed by us.

2. No person or organization has any right under this Policy to join us as a party to any legal action against an "insured".

**K. Termination**

1. **Cancellation By You**

   You may cancel this Policy by:

   **a.** Returning it to us; or

   **b.** Giving us advance written notice of the date cancellation is to take effect.

2. **Cancellation By Us**

   We may cancel this Policy as stated below by letting you know in writing of the date cancellation takes effect. This cancellation notice may be delivered to you or mailed to you at your mailing address shown in the Declarations.

   Proof of mailing will be sufficient proof of notice.

   **a.** When you have not paid the premium, we may cancel at any time by letting you know at least 10 days before the date cancellation takes effect.

   **b.** When this Policy has been in effect for less than 60 days and is not a renewal with us, we may cancel for any reason by letting you know at least 10 days before the date cancellation takes effect.

   **c.** When this Policy has been in effect for 60 days or more, or at any time if it is a renewal with us, we may cancel by letting you know at least 30 days before the date cancellation takes effect.

3. **Nonrenewal**

   We may elect not to renew this Policy. We may do so by delivering to you, or mailing to you at your mailing address shown in the Declarations, written notice at least 30 days before the expiration date of this Policy. Proof of mailing will be sufficient proof of notice.

4. **Other Termination Provisions**

   **a.** When this Policy is canceled, the premium for the period from the date of cancellation to the expiration date will be refunded pro rata.

   **b.** If the return premium is not refunded with the notice of cancellation or when this Policy is returned to us, we will refund it within a reasonable time after the date cancellation takes effect.

**L. Transfer Of Your Interest In This Policy**

1. Your rights and duties under this Policy may not be assigned without our written consent. However, if you die, coverage will be provided for:

   **a.** The surviving spouse if resident in the same household at the time of death. Coverage applies to the spouse as if a named insured shown in the Declarations;

   **b.** Any member of your household who is an "insured" at the time of your death, but only while a resident of the residence premises; or

   **c.** The legal representative of the deceased person as if a named insured shown in the Declarations. This applies only with respect to the representative's legal responsibility to maintain or use your "autos" or the residence premises shown in the Declarations.

2. Coverage will only be provided until the end of the policy period.

 Copyright, Insurance Services Office, Inc. 2014

**M.  Waiver Or Change Of Policy Provisions**

This Policy contains all the agreements between you and us. Its terms may not be changed or waived except by endorsement issued by us. If a change requires a premium adjustment, we will adjust the premium as of the effective date of the change.

 Copyright, Insurance Services Office, Inc. 2014

DL9817 02/15

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

## PERSONAL UMBRELLA LIABILITY POLICY EXCLUSION - FUNGI, WET OR DRY ROT, OR BACTERIA ENDORSEMENT

With respect to the coverage provided by this endorsement, the provisions of the Policy apply unless modified by the endorsement.

**I.   Definitions**

The following definition is added:

"Fungi" means any type or form of fungus, including mold or mildew, and any mycotoxins, spores, scents or by-products produced or released by fungi.

However, this does not include any fungi that are, are on, or are contained in, a good or product intended for consumption.

**II. Exclusions**

The following exclusion is added:

The coverages provided by this Policy do not apply to "bodily injury," "personal injury" or "property damage" arising directly or indirectly, in whole or in part, out of the actual, alleged or threatened inhalation of, ingestion of, contact with, exposure to, existence of, or presence of any "fungi," wet or dry rot, or bacteria.

          Copyright, Insurance Services Office, Inc., 2014

DL9874 02/19

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

## PERSONAL UMBRELLA LIABILITY POLICY
## AMENDMENT OF POLICY PROVISIONS – GEORGIA

**SECTION III – EXCLUSIONS**

**A.** Exclusion **A.15.** is replaced by the following:

The coverages provided by this Policy do not apply to:

**15.** "Bodily injury" or "personal injury" arising out of:

**a.** The transmission of a communicable disease by an "insured";

**b.** Sexual molestation, corporal punishment or physical or mental abuse; or

**c.** The use, sale, manufacture, delivery, transfer or possession by any person of a Controlled Substance(s) as defined by the Federal Food and Drug Law at 21 U.S.C.A. Sections 811 and 812. Controlled Substances include but are not limited to cocaine, LSD, marijuana and all narcotic drugs.

However, this exclusion **(A.15.c.)** does not apply:

**(1)** To the legitimate use of prescription drugs by a person following the lawful orders of a licensed health care professional; or

**(2)** Where the involvement with Controlled Substance(s) is not within the knowledge of any "insured".

**B.** Exclusion **A.22.** is replaced by the following:

The coverages provided by this Policy do not apply to:

**22.** "Bodily injury" or "personal injury" caused by an "occurrence" or offense involving the absorption, ingestion or inhalation of lead.

However, this exclusion **(A.22.)** does not apply to an "occurrence" or offense arising out of:

**a.** Any premises where you reside in a one-family dwelling; or

**b.** Any other single-family unit where you reside, including a condominium, cooperative or apartment unit, located in any other type of building.

**C.** Exclusion **A.23.** is replaced by the following:

The coverages provided by this Policy do not apply to:

**23.** "Personal injury" or "property damage" caused by an "occurrence" or offense of lead contamination.

However, this exclusion **(A.23.)** does not apply to an "occurrence" or offense arising out of:

**a.** Any premises where you reside in a one-family dwelling; or

**b.** Any other single-family unit where you reside, including a condominium, cooperative or apartment unit, located in any other type of building.

**SECTION VI – GENERAL PROVISIONS**

**A.** The **Termination** provision is replaced by the following:

**Termination**

**1. Cancellation By You**

You may cancel this Policy at any time by:

**a.** Returning this Policy to us; or

**b.** Giving us or our authorized agent advance notice of cancellation in one of the following ways:

**(1)** Orally;

**(2)** Electronically; or

    **(3)** Mailing or delivering to us written notice;

stating a future date on which the Policy is to be cancelled, subject to the following:

  **a.** If only your interest is affected, the effective date of cancellation will be either the date:

    **(1)** This Policy is returned to us;

    **(2)** We receive your notice of cancellation; or

    **(3)** Specified in the notice;

    whichever is later.

    However, upon our receipt of your notice of cancellation, we may waive the requirement that the notice state the future effective date of cancellation, as provided in either **1.a.(1)**, **1.a.(2)** or **1.a.(3)** above, by confirming to you the date and time of cancellation.

  **b.** If by statute, regulation or contract, this Policy may not be cancelled unless notice is given to a governmental agency, mortgagee or other third party, we will mail or deliver at least 10 days' notice to you and the third party as soon as practicable after receiving your request for cancellation.

    Our notice will state the effective date of cancellation, which will be the later of the following:

    **(1)** 10 days from the date of mailing or delivering our notice; or

    **(2)** The effective date of cancellation stated in your notice to us.

  **c.** In the event of oral cancellation, we shall, within 10 days provide you, electronically or in writing, confirmation of such requested cancellation.

  **d.** We may require that you provide written, electronic or other recorded verification of the request for cancellation prior to such cancellation taking effect.

**2. Cancellation By Us**

We may cancel this Policy by letting you know in writing of the date cancellation takes effect. This cancellation notice may be delivered to you, or mailed to you at your last known mailing address.

A receipt provided by, or such other evidence of mailing as prescribed or accepted by, the U.S. Postal Service will be sufficient proof of notice.

  **a.** When you have not paid the premium, whether payable to us or to our agent, we may cancel at any time by letting you know at least 10 days before the date cancellation takes effect.

  **b.** For any other reason, we may cancel by letting you know:

    **(1)** At least 10 days before the date cancellation takes effect, when this Policy has been in effect for less than 60 days and is not a renewal with us; or

    **(2)** At least 30 days before the date cancellation takes effect, when this Policy has been in effect for 60 days or more, or at any time if it is a renewal with us.

**3. Nonrenewal**

We may elect not to renew this Policy. We may do so by delivering to you, or mailing to you at your last known mailing address written notice at least 30 days before the expiration date of this Policy.

A receipt provided by, or such other evidence of mailing as prescribed or accepted by, the U.S. Postal Service will be sufficient proof of notice.

**4. Other Termination Provisions**

  **a.** When this Policy is canceled, the premium for the period from the date of cancellation to the expiration date will be refunded pro rata.

  **b.** If the return premium is not refunded with the notice of cancellation or when this Policy is returned to us, we will refund it no later than the date cancellation takes effect.

**B.** The following provision is added:

**Our Right To Recompute Premium**

We established the premium for this Policy based on the statements you made in the application for insurance. We have the right to recompute the premium if we later obtain information which affects the premium we charged.

DL9912 10/15

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

## PERSONAL UMBRELLA LIABILITY POLICY PUBLIC OR LIVERY CONVEYANCE EXCLUSION ENDORSEMENT

**I.   Definitions**

The following definition is added:

"Transportation network platform" means an online-enabled application or digital network used to connect passengers with drivers using vehicles for the purpose of providing prearranged transportation services for compensation.

**II.   Section III - Exclusions**

The following is added to Exclusion **A.4.**:

This exclusion **(A.4.)** includes but is not limited to any period of time an "auto" is being used by any "insured" who is logged into a "transportation network platform" as a driver, whether or not a passenger is "occupying" the "auto".

20-1768 08/91

### Provisions Applicable To
## CENTRAL MUTUAL INSURANCE COMPANY

### MUTUAL POLICY CONDITIONS

This policy is issued by a Mutual Company.  We have special regulations that apply by law to our organization, membership, policies and contracts.  The following forms a part of your policy:

This policy is nonassessable. You are not subject to any contingent liability nor liable for any assessment.

The Board of Directors, at their discretion, may determine and pay you any unused premiums (dividends).

### NOTICE OF ANNUAL MEETING

You are hereby notified that by virtue of this policy, you are a member of the Central Mutual Insurance Company and are entitled to vote either in person or by proxy at any and all meetings of our Company.  The annual meetings are held at our home office, Van Wert, Ohio, on the second Wednesday of May in each year at two o'clock P.M.

20-1769 08/91

## PROVISIONS APPLICABLE TO CENTRAL MUTUAL AND
## ALL AMERICA INSURANCE COMPANIES

**IN WITNESS WHEREOF,** we have executed and attested this policy. If required by state law, this policy is not valid unless it is countersigned by our authorized representative.

President                                    Secretary

20-2088 06/19



## Central Insurance Companies
## Privacy Notice

At the Central Insurance Companies (Central), we are committed to providing you with the best insurance products backed by consistent, top-quality service. While personal information about you is fundamental to our ability to do this, your privacy is also very important to us. This notice will tell you about our privacy policy and the practices we use in handling our nonpublic personal information.

**What kind of personal information do we collect about you and from whom?**

Central obtains most of our information directly from you. The application you complete, as well as any additional information you provide, generally gives us most of the information we need to know. We may also collect personal information about you from any of your other transactions with us, our affiliates, or others. Third party sources of personal information might include, government agencies, consumer reporting agencies, courts, and other public records. The types of personal information we gather depends on the nature of your insurance transaction. For auto insurance, we quite often obtain information from your motor vehicle records. For property coverages, we may send someone to inspect your property and verify information about its value and condition. A photo of any property to be insured might be taken. We may review insurance claims information and other loss information reports, and we may also obtain medical or financial information to adjust some claims. At times we may review personal information contained in consumer reports provided to us by a consumer reporting agency. The agency that prepares a consumer report for us may retain that report and disclose it to other persons as permitted by law.

**What do we do with the personal information collected about you?**

Personal information that has been collected about you may be retained in both our records and in your agent's files. We review it in evaluating your request for insurance coverage and in determining your rates. We will also refer to and use such information in our policy records for purposes related in issuing and servicing insurance policies and settling claims. We do retain information about our former customers in our files for Insurance Department market conduct purposes and for use in handling claims submitted to us after policy termination.

If coverage is declined or the charge for coverage is increased because of information contained in a consumer report we obtained, we will tell you as required by state law and the federal Fair Credit Reporting Act. We also will give you the name and address of the consumer reporting agency making the report.

**How do we safeguard the personal information in our records?**

Central uses a variety of physical, electronic, and procedural safeguards to protect the confidentiality and security of your personal information in our possession. We also limit our employees' access to your personal information to those with a business reason for knowing such information. Central also instructs our employees so that they will understand the importance of the confidentiality of personal information, and takes appropriate measures to enforce employee privacy responsibilities.

**To whom do we disclose personal information about you?**

We do not disclose any personal information about our customers or former customers, except as permitted by law. That means we may make disclosures to the following types of third parties, if necessary, without your consent:

- Our affiliated property and casualty insurance companies;
- Your independent agent or broker;
- Parties who perform a business, professional, or insurance function for our company;
- Independent claims adjusters, appraisers, investigators, medical professionals, and attorneys who need the information to investigate, defend, or settle a claim involving you;
- Businesses that conduct scientific research, including actuarial or underwriting studies;

- Consumer reporting agencies as reasonably necessary in connection with any application, policy, or claim involving you;
- Insurance support organizations which are established to collect information for the purpose of detecting and preventing insurance crimes or fraudulent claims;
- Insurance regulatory agencies in connection with the regulation of our business;
- Law enforcement or other governmental authorities to protect our legal interests or in cases of suspected fraud or illegal activities;
- Certificateholders or policyholders for the purpose of providing information regarding the status of an insurance transaction; or
- Lienholder, mortgagees, lessors, or other persons shown on our records as having a legal or beneficial interest in your policy.

**How can you find out about personal information we have about you?**

You are entitled to know what kind of personal information we keep in our files about you, to have reasonable access to it, and to receive a copy.  Contact us at any of the ways provided at the end of this notice if you have questions about what personal information we may have on file.  Tell us what information you would like to receive.  Provide your complete name, address, and all policy or claim numbers issued to you by us.

Within thirty (30) business days of receipt of your request, we will inform you in writing of the nature and substance of locatable, retrievable, and available recorded personal information about you in our files.  You may review this information in person or receive a copy at a reasonable charge.  We will also identify any person or organizations listed in our records to whom we have disclosed this information within the past two (2) years.  In addition, you will be given the name and address of any consumer credit reporting agency that prepared a report about you so that you can contact them for a copy of that report if you wish.

After you have reviewed the personal information about you in our file, you can contact us if you believe it should be corrected, amended, or deleted.  Tell us what you think is wrong and why.  We will consider your request and within thirty (30) business days either change our files or tell you that we did not and the reason.  If we do not make changes, you will have the right to insert in our file a concise statement containing what you believe to be the correct, relevant, or fair information and explaining why you believe the information on file to be improper. We will notify persons designated by you to whom we have previously disclosed the information of the change of your statement. Subsequent disclosures we make also will include your statement.

**Domestic Abuse Procedure**

In addition to the aforementioned privacy policies, we have additional procedures in place to handle personal information regarding persons who are victims of domestic abuse.  If you wish to claim domestic abuse status or invoke Central's domestic abuse safeguards, please contact us as set forth below.

**How to Contact Us Regarding Use of Your Personal Information**

Please use the following information to contact us regarding our privacy policies. Remember to include your name, address, policy, or claim number.

Privacy Coordinator
Central Insurance Companies
800 South Washington Street
Van Wert, Ohio 45891-2381
E-mail: privacycoordinator@central-insurance.com

The Central Insurance Companies include: Central Mutual Insurance Company and All America Insurance Company.

20-2143 06/14



# AVAILABLE PAY PLANS

The company offers.

1. **EFT Plans (Electronic Funds Transfer): ** No service fees apply to any of the EFT plans. **

   a.   Annual EFT — the premium is paid in one installment withdrawn on the effective date of the policy.

   b.   Semi-Annual EFT — the premium is paid in two installments, withdrawn six months apart.

   c.   Quarterly EFT — the premium is paid in four installments, withdrawn three months apart.

   d.   Monthly EFT — the premium is paid in twelve monthly withdrawals.

2. **NON-EFT Plans:**

   a.   Annual — the premium is paid in one installment due on the effective date of the policy. No service fees apply.

   b.   Semi-Annual — the premium is paid in two installments due six months apart. Service fees apply.

   c.   Quarterly — the premium is paid in four installments due three months apart. Service fees apply.

   d.   Monthly — the premium is paid in twelve monthly installments. Service fees apply.

We offer account billing on each of the above plans which allows for multiple policies to be billed together on a single account.  We require separate billing accounts for personal and commercial lines policies.

Please note, the above plans may not apply to all types of policies.

20-2342 02/15



CENTRAL
INSURANCE
COMPANIES

*Fulfilling the Promise Since 1876*

# IMPORTANT INFORMATION ABOUT
# YOUR PERSONAL UMBRELLA POLICY

Thank you for placing your trust in Central to provide the protection and peace of mind you deserve.  To ensure you are properly protected by your Personal Umbrella Policy, it is important that you report any changes in covered exposures to your agent.

Please review the second page of your Personal Umbrella Policy Declarations to verify that all of your exposures are listed.  Exposures that should be listed on the declarations page include:

- Homes or dwellings you live in or rent to others

- Private passenger autos, including antiques and classics

- Miscellaneous type vehicles, including motorhomes, motorcycles, golf carts, mopeds, scooters, snowmobiles, and ATVs

- Boats or personal watercrafts

- Above ground or in-ground swimming pools

- Trampolines

- Business property or activities covered by an underlying Personal Liability Policy, including an incidental office or studio used in connection with your business, home-based businesses, and other business pursuits

- Incidental farming and farm land rented to others

- Vacant land parcels

- Trusts, including a residence or dwelling held in trust, or an automobile placed in a trust

- Residences or rental dwellings owned by a Limited Liability Company

If changes are needed, please contact your Central agent who will work with you to ensure you are properly protected.

This is a policyholder notice and is not part of your policy.  If there are any discrepancies between this notice and your policy, the provisions of the policy shall prevail.

8-1451 02/15

## PERSONAL UMBRELLA POLICY
## UNINSURED/UNDERINSURED MOTORISTS COVERAGE ENDORSEMENT

A.        **MINIMUM REQUIRED UNDERLYING INSURANCE POLICIES**

| TYPE OF INSURANCE | MINIMUM REQUIRED UNDERLYING INSURANCE LIMITS |
|---|---|
| Uninsured Motorists Coverage or Underinsured Motorists Coverage | Bodily Injury<br>$250,000 each person<br>$500,000 each accident<br>or $300,000 Combined Single Limit |

B.   Limits of Liability - (see Declarations page of the  policy to which this endorsement is attached).

C.   **We** agree to pay, subject to the terms and conditions of the Uninsured Motorists coverage or Underinsured Motorists coverage included in an underlying policy of insurance described in the Minimum Required Underlying Insurance Limits of the Declarations, all sums that **you** are entitled to recover from the owner or operator of an uninsured or underinsured automobile as defined in the underlying policy because of **bodily injury**, provided:

  1.   **you** maintain the minimum required underlying insurance shown in A. above for Uninsured Motorists coverage or Underinsured Motorists coverage.

  2.   **we** shall only be liable for damages in excess of the minimum required **underlying limits** or **your** actual limits if higher.

D.   The limit of liability shown in B. above is the most **we** will pay for **loss** resulting from one **occurrence** regardless of the number of persons who are insured under this endorsement and no matter how many persons are injured.

E.   All other provisions of the policy to which this endorsement is attached apply.

8-1912 07/12

# PERSONAL UMBRELLA POLICY
## SCHEDULE OF MINIMUM REQUIRED UNDERLYING LIMITS

| Underlying Insurance Type of Coverage | Minimum Required Underlying Insurance Limits |
|---|---|
| **A. Personal Liability** | Bodily Injury Liability and<br>Property Damage Liability Combined:<br>$300,000 each accident or occurrence |
| **B. Automobile Liability**<br>(including liability for recreational vehicles licensed for use on public roads, including furnished automobiles) | Bodily Injury Liability:<br>$250,000 each person<br>$500,000 each accident or occurrence<br>**or**<br>$300,000 each person<br>$300,000 each accident or occurrence<br>Property Damage Liability:<br>$100,000 each accident or occurrence<br>**or**<br>Bodily Injury Liability and<br>Property Damage Liability Combined:<br>$300,000 each accident or occurrence |
| **C. Recreational Vehicle Liability**<br>(for vehicles not licensed for use on public roads) | Bodily Injury Liability:<br>$250,000 each person<br>$500,000 each accident or occurrence<br>**or**<br>$300,000 each person<br>$300,000 each accident or occurrence<br>Property Damage Liability:<br>$100,000 each accident or occurrence<br>**or**<br>Bodily Injury Liability and<br>Property Damage Liability Combined:<br>$300,000 each accident or occurrence |
| **D. Watercraft Liability** | Bodily Injury Liability:<br>$250,000 each person<br>$500,000 each accident or occurrence<br>**or**<br>$300,000 each person<br>$300,000 each accident or occurrence<br>Property Damage Liability:<br>$100,000 each accident or occurrence<br>**or**<br>Bodily Injury Liability and<br>Property Damage Liability Combined:<br>$300,000 each accident or occurrence |
| **E. Business Property or Activities** | Bodily Injury Liability and<br>Property Damage Liability Combined:<br>$300,000 each accident or occurrence |

8-2147 02/15

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

## PERSONAL UMBRELLA LIABILITY POLICY
## NAMED DRIVER EXCLUSION ENDORSEMENT

### SCHEDULE *

The Named Driver Exclusion Endorsement applies with respect to the "named excluded driver" indicated below or in the Declarations.

**Name Of "Named Excluded Driver"**    ON FILE WITH COMPANY

**\* (If no entry appears above, information required to complete this endorsement will be shown in the Declarations as applicable to this endorsement.)**

With respect to the coverage(s) for which the Named Driver Exclusion applies, the provisions of the Policy apply unless modified by the endorsement:

**I.   Definitions**

The following definition is added:

"Named excluded driver" means a person who is shown in the Schedule or in the Declarations as a named excluded driver who is excluded from coverage under the policy as described in Section **II.**

**II.   Named Driver Exclusion**

The coverages provided by this Policy do not apply to "bodily injury" or "property damage" arising out of:

**A.**   The maintenance, operation or use of any "auto" by the "named excluded driver";

**B.**   The entrustment of any "auto" by an "insured" to the "named excluded driver";

**C.**   The failure to supervise or negligent supervision of the "named excluded driver" involving any "auto" by an "insured"; or

**D.**   Vicarious liability, whether or not imposed by law, for the actions of the "named excluded driver" involving any "auto."

After reading this endorsement, I understand and accept the exclusions of coverage provided by this endorsement. I acknowledge and understand that this exclusion shall remain in effect for the term of the policy and for each renewals, reinstatement, substitute, modified, replacement or amended policy, unless discontinued by the insurer.

| | |
|---|---|
| ON FILE WITH COMPANY | ON FILE WITH COMPANY |
| Named Insured Signature | Named Insured Signature |
| ON FILE WITH COMPANY | ON FILE WITH COMPANY |
| Date | Date |
| PXS  3627643 | |
| Policy Number | |

8-2147 02/15          Includes material copyrighted, Insurance Services Office, Inc.,
with permission

8-2278 01/12

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

## CENTRAL MUTUAL SUMMIT® PERSONAL UMBRELLA ENDORSEMENT

If a premium charge appears on the Declarations page for this endorsement, then the following provisions apply.

### RENTAL CAR LOSS OF USE COVERAGE

In the event of covered loss to a private passenger vehicle that you are renting from a licensed rental agency; we will pay the loss of profits, not to exceed the normal rental fee, which would have been earned if the rented vehicle had not been damaged. The following conditions apply:

1. There is a loss to the rental vehicle caused by "Collision" or Other than "Collision."
2. You are liable by rental contract to continue to pay the rental fee as a result of the covered loss that would prevent the rental of the vehicle to others.
3. Coverage will begin the day following the loss to the vehicle; provided you have promptly notified us of the loss, and will end the earlier of:
   a. the day repairs are completed; or
   b. the day we make payment for the replacement of the rental car; or
   c. thirty (30) days after this coverage began.

Our limit of liability for any one occurrence will be $1,000. This is additional insurance. No deductible applies to this coverage.

### INCREASED LOSS OF EARNINGS COVERAGE

Additional coverage **C.3.**, under Section **II** of the Personal Umbrella Liability Policy is deleted and replaced by the following:

3. Reasonable expenses incurred by an "insured" at our request, including actual loss of earnings (but not loss of other income) up to $1,000 per day, for assisting us in the investigation or defense of a claim or suit, and

### LOSS ASSESSMENT COVERAGE

Exclusion **B.**, under Section **III** of the Personal Umbrella Liability Policy is deleted and replaced by the following:

We will pay up to $100,000 for your share of loss assessment charged during the policy period against you by a corporation or association of property owners, when the assessment is made as a result of:

a. "Bodily injury" or "property damage" not excluded under the liability section of your "underlying insurance."
b. Liability for an act of a director, officer or trustee in the capacity as a director, officer or trustee, provided:
   1) The director, officer or trustee is elected by the members of a corporation or association of property owners; and
   2) The director, officer or trustee serves without deriving any income from the exercise of duties which are solely on behalf of a corporation or association of property owners.

This coverage applies only to loss assessments charged against you as owner or tenant of the "residence premises" as defined in the "underlying insurance" policy.

**Exclusions:**

We do not cover assessments:

1. Charged against you or a corporation or association of property owners by any governmental body.
2. Resulting from damage to property unless coverage is provided under the liability portion of your "underlying insurance."
3. Resulting from a deductible in the policy of insurance purchased by a corporation or association of property owners.

**Limit of Liability**

Regardless of the number of assessments, $100,000 is the most we will pay for loss arising out of:

a. One accident, including continuous or repeated exposure to substantially the same general harmful condition; or
b. A covered act of a director, officer or trustee. An act involving more than one director, officer or trustee is considered to be a single act.



CENTRAL MUTUAL INSURANCE COMPANY
800 S WASHINGTON ST
VAN WERT OH 45891-2381
www.central-insurance.com

**Effective Date:** 08/08/2021

# SUMMIT PERSONAL UMBRELLA POLICY DECLARATIONS

**REASON FOR THESE DECLARATIONS:** AMENDED DECLARATION

**NAMED INSURED**
KENNETH G SHEETS
ANGELA D SHEETS
472 KIMBERLY CT
MCDONOUGH GA 30252-3659

**AGENCY**
SNELLINGS WALTERS INS AGENCY
1117 PERIMETER CTR STE W101
ATLANTA GA  30338-5449
(770) 396-9600
www.snellingswalters.com

**POLICY NUMBER** PXS 3627643
**POLICY PERIOD**   AT ADDRESS OF NAMED INSURED FROM 08/08/2021 TO 08/08/2022
(12:01 A.M. STANDARD TIME)

## YOUR PREMIUM

RETURN PREMIUM AS A RESULT OF THIS CHANGE          <span style="color:red">Redacted Premium Info</span>
TOTAL ANNUAL PREMIUM

## YOU ARE SAVING MONEY

YOUR DISCOUNTS
PACKAGED POLICY
AFFILIATE GROUP RATING
CREDIT FOR HIGHER UNDERLYING LIMIT

## LIMIT OF LIABILITY

$1,000,000
UNINSURED/UNDERINSURED -  $1,000,000

## DEDUCTIBLE

$250

## UNDERLYING POLICY SCHEDULE

| TYPE OF POLICY | COMPANY | LIABILITY LIMIT |
|---|---|---|
| AUTOMOBILE | CENTRAL MUTUAL INSURANCE | $250,000/$500,000/$100,000 |
| PRIMARY HOMEOWNERS | CENTRAL MUTUAL INSURANCE | $500,000 |

# SUMMIT PERSONAL UMBRELLA POLICY DECLARATIONS (CONTINUED)

**NAMED INSURED**
KENNETH G SHEETS

**POLICY NUMBER**
PXS 3627643

## PREMIUM COMPUTATION

| | NUMBER | PREMIUM |
|---|---|---|
| INITIAL RESIDENCE | | <span style="color:red">Redacted</span> |
| 472 KIMBERLY CT | | <span style="color:red">Premium Info</span> |
| MCDONOUGH GA 30252 | | |
| ON PREMISES SWIMMING POOL(S) | 01 | |
| INITIAL VEHICLE | | |
| 2017 LEXU RX 350 | | |
| VIN JTJBZMCA6H2024195 | | |
| ADDITIONAL VEHICLE(S) | 04 | |
| 2009 ROVE RANGE ROVE | | |
| VIN SALSK25499A191217 | | |
| 2011 FORD F-150 | | |
| VIN 1FTFW1R66BFD00082 | | |
| 2019 HOND ACCORD | | |
| VIN 1HGCV3F98KA017990 | | |
| 2015 CHEV SILVERADO | | |
| VIN 3GCUKSECXFG402560 | | |

SUMMIT ENDORSEMENT
    CLAIMS EXPENSE - LOSS OF EARNINGS UP TO $1,000 PER DAY
    RENTAL CAR LOSS OF USE UP TO $1,000
    LOSS ASSESSMENT - LIABILITY COVERAGE UP TO $100,000

BASE UNINSURED/UNDERINSURED MOTORIST COVERAGE

**TOTAL DISCOUNTS**

**TOTAL ANNUAL PREMIUM**

## POLICY EXCLUSIONS

NAMED DRIVER EXCLUSION
NATHAN SHEETS

# SUMMIT PERSONAL UMBRELLA POLICY DECLARATIONS (CONTINUED)

**NAMED INSURED**
KENNETH G SHEETS

**POLICY NUMBER**
PXS 3627643

## FORMS APPLICABLE TO POLICY

| FORM | DATE | FORM TITLE |
|------|------|-----------|
| DL9801 | 02/15 | PERSONAL UMBRELLA LIABILITY POLICY |
| DL9817 | 02/15 | PUP LIABILITY POLICY EXCL-FUNGI, WET OR DRY ROT, OR BACTERIA ENDT |
| DL9874 | 02/19 | GA-PERSONAL UMBRELLA POLICY AMENDMENT OF POLICY PROVISIONS |
| DL9912 | 10/15 | PUP PUBLIC OR LIVERY CONVEYANCE EXCLUSION ENDORSEMENT |
| 20-1768 | 08/91 | MUTUAL POLICY CONDITIONS-APPLICABLE TO CENTRAL MUTUAL |
| 20-1769 | 08/91 | PROVISIONS APPLICABLE TO CENTRAL MUTUAL & ALL AMERICA INS CO |
| 8-1451 | 02/15 | PERSONAL UMBRELLA POLICY UNINSURED/UNDERINSURED MOTORISTS COV END |
| 8-1912 | 07/12 | SCHEDULE OF MINIMUM REQUIRED UNDERLYING LIMITS |
| 8-2147 | 02/15 | PERSONAL UMBRELLA NAMED DRIVER EXCLUSION ENDORSEMENT |
| 8-2278 | 01/12 | CENTRAL MUTUAL SUMMIT PERSONAL UMBRELLA ENDORSEMENT |

\* Denotes forms attached with this transaction.

_____          _____          **08/03/2021**
**PRESIDENT**                                    **SECRETARY**                                   **DATE**

THESE DECLARATIONS REPLACE ALL PRIOR DECLARATIONS IF ANY, AND WITH POLICY PROVISIONS AND ENDORSEMENTS,
COMPLETE THIS POLICY



CENTRAL MUTUAL INSURANCE COMPANY
800 S WASHINGTON ST
VAN WERT OH 45891-2381
www.central-insurance.com

**Effective Date:** 10/07/2021

## SUMMIT PERSONAL UMBRELLA POLICY DECLARATIONS

**REASON FOR THESE DECLARATIONS:** AMENDED DECLARATION

**NAMED INSURED**
KENNETH G SHEETS
ANGELA D SHEETS
472 KIMBERLY CT
MCDONOUGH GA 30252-3659

**AGENCY**
SNELLINGS WALTERS INS AGENCY
1117 PERIMETER CTR STE W101
ATLANTA GA  30338-5449
(770) 396-9600
www.snellingswalters.com

**POLICY NUMBER** PXS 3627643
**POLICY PERIOD**   AT ADDRESS OF NAMED INSURED FROM 08/08/2021 TO 08/08/2022
                    (12:01 A.M. STANDARD TIME)

**YOUR PREMIUM**

RETURN PREMIUM AS A RESULT OF THIS CHANGE          <span style="color:red">Redacted Premium Info</span>
TOTAL ANNUAL PREMIUM

**YOU ARE SAVING MONEY**

YOUR DISCOUNTS
    PACKAGED POLICY
    AFFILIATE GROUP RATING
    CREDIT FOR HIGHER UNDERLYING LIMIT

**LIMIT OF LIABILITY**

$1,000,000
UNINSURED/UNDERINSURED -  $1,000,000

**DEDUCTIBLE**

$250

**UNDERLYING POLICY SCHEDULE**

| TYPE OF POLICY | COMPANY | LIABILITY LIMIT |
|---|---|---|
| AUTOMOBILE | CENTRAL MUTUAL INSURANCE | $250,000/$500,000/$100,000 |

# SUMMIT PERSONAL UMBRELLA POLICY DECLARATIONS (CONTINUED)

**NAMED INSURED**
KENNETH G SHEETS

**POLICY NUMBER**
PXS 3627643

**PREMIUM COMPUTATION**

| | NUMBER | PREMIUM |
|---|---|---|
| INITIAL RESIDENCE | | <span style="color:red">Redacted</span> |
|    472 KIMBERLY CT | | <span style="color:red">Premium Info</span> |
|    MCDONOUGH GA 30252 | | |
| ON PREMISES SWIMMING POOL(S) | 01 | |
| INITIAL VEHICLE | | |
|    2017 LEXU RX 350 | | |
|    VIN JTJBZMCA6H2024195 | | |
| ADDITIONAL VEHICLE(S) | 03 | |
|    2009 ROVE RANGE ROVE | | |
|    VIN SALSK25499A191217 | | |
|    2011 FORD F-150 | | |
|    VIN 1FTFW1R66BFD00082 | | |
|    2019 HOND ACCORD | | |
|    VIN 1HGCV3F98KA017990 | | |

SUMMIT ENDORSEMENT
   CLAIMS EXPENSE - LOSS OF EARNINGS UP TO $1,000 PER DAY
   RENTAL CAR LOSS OF USE UP TO $1,000
   LOSS ASSESSMENT - LIABILITY COVERAGE UP TO $100,000

BASE UNINSURED/UNDERINSURED MOTORIST COVERAGE

**TOTAL DISCOUNTS**

**TOTAL ANNUAL PREMIUM**

**POLICY EXCLUSIONS**

   NAMED DRIVER EXCLUSION
   NATHAN SHEETS

# SUMMIT PERSONAL UMBRELLA POLICY DECLARATIONS (CONTINUED)

**NAMED INSURED**
KENNETH G SHEETS

**POLICY NUMBER**
PXS 3627643

### FORMS APPLICABLE TO POLICY

| FORM | DATE | FORM TITLE |
|------|------|------------|
| DL9801 | 02/15 | PERSONAL UMBRELLA LIABILITY POLICY |
| DL9817 | 02/15 | PUP LIABILITY POLICY EXCL-FUNGI, WET OR DRY ROT, OR BACTERIA ENDT |
| DL9874 | 02/19 | GA-PERSONAL UMBRELLA POLICY AMENDMENT OF POLICY PROVISIONS |
| DL9912 | 10/15 | PUP PUBLIC OR LIVERY CONVEYANCE EXCLUSION ENDORSEMENT |
| 20-1768 | 08/91 | MUTUAL POLICY CONDITIONS-APPLICABLE TO CENTRAL MUTUAL |
| 20-1769 | 08/91 | PROVISIONS APPLICABLE TO CENTRAL MUTUAL AND ALL AMERICA INS CO |
| 8-1451 | 02/15 | PERSONAL UMBRELLA POLICY UNINSURED/UNDERINSURED MOTORISTS COV END |
| 8-1912 | 07/12 | SCHEDULE OF MINIMUM REQUIRED UNDERLYING LIMITS |
| 8-2147 | 02/15 | PERSONAL UMBRELLA NAMED DRIVER EXCLUSION ENDORSEMENT |
| 8-2278 | 01/12 | CENTRAL MUTUAL SUMMIT PERSONAL UMBRELLA ENDORSEMENT |

\* Denotes forms attached with this transaction.

| _____ | _____ | **11/23/2021** |
|:---:|:---:|:---:|
| **PRESIDENT** | **SECRETARY** | **DATE** |

THESE DECLARATIONS REPLACE ALL PRIOR DECLARATIONS IF ANY, AND WITH POLICY PROVISIONS AND ENDORSEMENTS, COMPLETE THIS POLICY



CENTRAL MUTUAL INSURANCE COMPANY
800 S WASHINGTON ST
VAN WERT OH 45891-2381
www.central-insurance.com

**Effective Date:** 12/13/2021

# SUMMIT PERSONAL UMBRELLA POLICY DECLARATIONS

**REASON FOR THESE DECLARATIONS:** AMENDED DECLARATION

**NAMED INSURED**
KENNETH G SHEETS
ANGELA D SHEETS
472 KIMBERLY CT
MCDONOUGH GA 30252-3659

**AGENCY**
SNELLINGS WALTERS INS AGENCY
1117 PERIMETER CTR STE W101
ATLANTA GA  30338-5449
(770) 396-9600
www.snellingswalters.com

**POLICY NUMBER** PXS 3627643
**POLICY PERIOD**   AT ADDRESS OF NAMED INSURED FROM 08/08/2021 TO 08/08/2022
(12:01 A.M. STANDARD TIME)

### YOUR PREMIUM

| | |
|---|---|
| **ADDITIONAL PREMIUM AS A RESULT OF THIS CHANGE** | Redacted Premium |
| **TOTAL ANNUAL PREMIUM** | Info |

### YOU ARE SAVING MONEY

YOUR DISCOUNTS
PACKAGED POLICY
AFFILIATE GROUP RATING
CREDIT FOR HIGHER UNDERLYING LIMIT

### LIMIT OF LIABILITY

$1,000,000
UNINSURED/UNDERINSURED -  $1,000,000

### DEDUCTIBLE

$250

### UNDERLYING POLICY SCHEDULE

| TYPE OF POLICY | COMPANY | LIABILITY LIMIT |
|---|---|---|
| AUTOMOBILE | CENTRAL MUTUAL INSURANCE | $250,000/$500,000/$100,000 |
| PRIMARY HOMEOWNERS | CENTRAL MUTUAL INSURANCE | $500,000 |

# SUMMIT PERSONAL UMBRELLA POLICY DECLARATIONS (CONTINUED)

**NAMED INSURED**
KENNETH G SHEETS

**POLICY NUMBER**
PXS 3627643

**PREMIUM COMPUTATION**

| | NUMBER | PREMIUM |
|---|---|---|
| INITIAL RESIDENCE<br>472 KIMBERLY CT<br>MCDONOUGH GA 30252 | | Redacted<br>Premium Info |
| ON PREMISES SWIMMING POOL(S) | 01 | |
| INITIAL VEHICLE<br>2017 LEXU RX 350<br>VIN JTJBZMCA6H2024195 | | |
| ADDITIONAL VEHICLE(S)<br>2009 ROVE RANGE ROVE<br>VIN SALSK25499A191217 | 03 | |
| 2011 FORD F-150<br>VIN 1FTFW1R66BFD00082 | | |
| 2019 HOND ACCORD<br>VIN 1HGCV3F98KA017990 | | |

SUMMIT ENDORSEMENT
    CLAIMS EXPENSE - LOSS OF EARNINGS UP TO $1,000 PER DAY
    RENTAL CAR LOSS OF USE UP TO $1,000
    LOSS ASSESSMENT - LIABILITY COVERAGE UP TO $100,000

BASE UNINSURED/UNDERINSURED MOTORIST COVERAGE

**TOTAL DISCOUNTS**

**TOTAL ANNUAL PREMIUM**

**POLICY EXCLUSIONS**

    NAMED DRIVER EXCLUSION
    NATHAN SHEETS

# SUMMIT PERSONAL UMBRELLA POLICY DECLARATIONS (CONTINUED)

**NAMED INSURED**
KENNETH G SHEETS

**POLICY NUMBER**
PXS 3627643

## FORMS APPLICABLE TO POLICY

| FORM | DATE | FORM TITLE |
|------|------|-----------|
| DL9801 | 02/15 | PERSONAL UMBRELLA LIABILITY POLICY |
| DL9817 | 02/15 | PUP LIABILITY POLICY EXCL-FUNGI, WET OR DRY ROT, OR BACTERIA ENDT |
| DL9874 | 02/19 | GA-PERSONAL UMBRELLA POLICY AMENDMENT OF POLICY PROVISIONS |
| DL9912 | 10/15 | PUP PUBLIC OR LIVERY CONVEYANCE EXCLUSION ENDORSEMENT |
| 20-1768 | 08/91 | MUTUAL POLICY CONDITIONS-APPLICABLE TO CENTRAL MUTUAL |
| 20-1769 | 08/91 | PROVISIONS APPLICABLE TO CENTRAL MUTUAL AND ALL AMERICA INS CO |
| 8-1451 | 02/15 | PERSONAL UMBRELLA POLICY UNINSURED/UNDERINSURED MOTORISTS COV END |
| 8-1912 | 07/12 | SCHEDULE OF MINIMUM REQUIRED UNDERLYING LIMITS |
| 8-2147 | 02/15 | PERSONAL UMBRELLA NAMED DRIVER EXCLUSION ENDORSEMENT |
| 8-2278 | 01/12 | CENTRAL MUTUAL SUMMIT PERSONAL UMBRELLA ENDORSEMENT |

* Denotes forms attached with this transaction.

_____ _____ **12/14/2021**
**PRESIDENT** **SECRETARY** **DATE**

THESE DECLARATIONS REPLACE ALL PRIOR DECLARATIONS IF ANY, AND WITH POLICY PROVISIONS AND ENDORSEMENTS, COMPLETE THIS POLICY

8-2284 03/12